# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | |
|---|---|
| **Waterloo Rod Company, Inc.** | **Case No. 6:21-cv-33** |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| **v.** | |
| **Foreverlast Hunting Products, Inc.** | (1) **TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| **Defendant.** | (2) **TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);** |

(3) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**
(4) **TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;**
(5) **TRADEMARK DILUTION IN VOLATION OF TEX. BUS. & COM. CODE § 16.103;**
(6) **COMMON LAW TRADE DRESS INFRINGEMENT;**
(7) **COMMON LAW TRADEMARK INFRINGEMENT;**
(8) **COMMON LAW UNFAIR COMPETITION;**
(9) **COMMON LAW MISAPPROPRIATION; AND**
(10) **UNJUST ENRICHMENT.**

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, Waterloo Rod Company, Inc. ("Waterloo"), for its complaint against Foreverlast Hunting Products, Inc. ("Foreverlast"), alleges as follows:

### The Parties

1.    Waterloo is a company organized and existing under the laws of the State of Texas with a principal place of business at 703 N. Main, Victoria, TX 77901.

2.      On information and belief, Foreverlast is a company organized and existing under the laws of the State of Texas with a principal place of business at 1456 East Cemetery Road, Hallettsville, Texas 77964.

### Jurisdiction and Venue

3.      This is a complaint for damages and injunctive relief and includes multiple grounds for relief including trade dress infringement, trade dress dilution, trademark infringement, trademark dilution, unfair competition and false designation of origin, misappropriation, and unjust enrichment.  This complaint arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"); the Texas Business & Commerce Code; federal common law; and state common law, including the law of Texas.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.      This Court has personal jurisdiction over Foreverlast because, *inter alia*, Foreverlast is a Texas company with a principal place of business in Texas and in this District. This Court also has personal jurisdiction over Foreverlast because, *inter alia*, Foreverlast is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas, including in this District. Among other things, (i) Foreverlast has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, infringing products to customers and potential customers, including in this District, and (ii) Foreverlast's tortious acts giving rise to this lawsuit and harm to Waterloo have occurred and are occurring in the State of Texas, including in this District, including sales of Foreverlast's infringing products addressed below occurring in this District.

6.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

## General Allegations – Waterloo's Intellectual Property

7.      For years, Waterloo has continuously engaged in the design, development, manufacture, promotion, and sale of its fishing rods, including its Salinity and Phantom series fishing rods.  Waterloo created unique, distinctive, and non-functional designs to use with its Salinity and Phantom series fishing rods.  Waterloo has extensively and continuously promoted and used these designs in the United States and Texas.  Through that extensive and continuous promotion and use, Waterloo's designs have become a well-known indicator of the origin and quality of Waterloo's Salinity and Phantom series fishing rods.  Waterloo's designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, Waterloo owns trade dress rights relating to its Salinity and Phantom series fishing rods.

8.      Waterloo has enjoyed significant sales of its Salinity and Phantom series fishing rods in the United States and Texas. Waterloo has invested significant resources in the design, development, manufacture, advertising, and marketing of its Salinity and Phantom series fishing rods.  The designs and features of Waterloo's Salinity and Phantom series fishing rods have received widespread public attention in the United States and Texas.  For example, the Salinity and Phantom series fishing rods have been featured in numerous magazine and Internet articles and posts, including, for example, the Texas Saltwater Fishing Magazine.  As another example, the Salinity and Phantom series fishing rods have also been featured on television programs including, for example, numerous Elite Fishing League fishing tournaments.  As another example, popular fishing guides use the Salinity and Phantom series fishing rods and promote the Salinity and Phantom series rods to their customers and on their websites, including Captain Steve Hillman

of Hillman Guide Service (https://www.hillmanguideservice.com/), Captain James Plaag of Silver King Adventures (http://skfishingadventures.com/), and Captain David Rowsey (http://www.davidrowsey.com/contact.html#Links). As yet another example, professional fishermen own and use the Salinity and Phantom series fishing rods, including Jimmy Lloyd, Mark Robinson, Kevin Akin, Travis Land, and Neal Flanagan.

9.      The designs of the Salinity and Phantom series fishing rods have distinctive and non-functional features that identify to consumers that the origin of the fishing rods is Waterloo. As a result of at least Waterloo's continuous and exclusive use of the designs of the Salinity and Phantom series fishing rods, Waterloo's marketing, advertising, and sales of the Salinity and Phantom series fishing rods, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, Waterloo owns trade dress rights in the designs and appearances of the Salinity and Phantom series fishing rods, which consumers have come to uniquely associate with Waterloo.

10.     Exemplary images of Waterloo's Salinity and Phantom series fishing rods are shown below in Illustration 1:

| Illustration 1: Exemplary Images of Waterloo's Salinity and Phantom Series Fishing Rods. |
| :---: |



**Waterloo Salinity Spinning Rod**

**Illustration 1: Exemplary Images of Waterloo's Salinity and Phantom Series Fishing Rods.**



**Waterloo Phantom Casting Rod**

11.     Waterloo has trade dress rights in the overall look, design, and appearance of its Salinity and Phantom series fishing rods, which include the design and appearance of the butt grip of the Salinity and Phantom series fishing rods; the design and appearance of the rear grip of the Salinity and Phantom series fishing rods; the design and appearance of the foregrip of the Salinity and Phantom series fishing rods; the design, appearance, and placement of the dual trim bands between the butt grip and the rear grip of the Salinity and Phantom series fishing rods; the design, appearance, and placement of the trim bands above the foregrip of the Salinity and Phantom series fishing rods; the design and appearance of the hook keeper of the Salinity and Phantom series fishing rods; the markings near the first and second line guides of the Salinity and Phantom series fishing rods; the color contrast and color combinations of the Salinity and Phantom series fishing rods; and the relationship of these features to each other and to other features.

12.     As a result of Waterloo's exclusive, continuous, and substantial use, advertising, and sales of its Salinity and Phantom series fishing rods, bearing Waterloo's trade dress, and the publicity and attention that has been paid to Waterloo's trade dress, Waterloo's trade dress has become famous in Texas and in geographic areas in Texas and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate Waterloo's trade dress as a source identifier of Waterloo.

13.     Waterloo has also used a trademark, , in the United States and the State of Texas in connection with its goods and services, including its Salinity and Phantom series fishing rods ("Waterloo's Trademark"). In view of Waterloo's extensive and continuous use of Waterloo's Trademark, consumers have come to associate Waterloo Trademark's as a source

7

identifier of Waterloo, and Waterloo owns trademark rights in Waterloo's Trademark. Exemplary images of Waterloo products bearing Waterloo's Trademark are shown below in Illustration 2:



| Illustration 2: Exemplary Image of Waterloo Products Bearing Waterloo's Trademark. |
|---|
| Hang Tag |

14.     As a result of, *inter alia*, Waterloo's exclusive, continuous, and substantial use of Waterloo's Trademark, Waterloo's exclusive, continuous, and substantial advertising and promoting of products bearing Waterloo's Trademark, and the publicity and attention that has been paid to Waterloo's Trademark, this trademark has become famous in Texas and in geographic areas of Texas and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate Waterloo's Trademark as a source identifier of Waterloo.

## General Allegations – Foreverlast's Unlawful Activities

15.    Foreverlast has purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products that violate Waterloo's rights, including the rights protected by Waterloo's intellectual property.  Foreverlast's infringing products are confusingly similar imitations of Waterloo's products.  Foreverlast's actions have all been without the authorization of Waterloo.

16.    As discussed in more detail below, Foreverlast is selling infringing fishing rods and is unlawfully using at least one colorable imitation of Waterloo's Trademark to do so.  Foreverlast is trying to confuse consumers into thinking that its fishing rods are associated with, sponsored by, or approved by Waterloo, when they are not.  Foreverlast's actions are unlawful, and they must stop.  Foreverlast must also compensate Waterloo for Foreverlast's violations of the law.

17.    Foreverlast's infringing products include at least Foreverlast's "Aquarods" series of fishing rods.  Exemplary images of Foreverlast's infringing fishing rods are shown below in Illustration 3.

| Illustration 3: Exemplary Images of Foreverlast's Infringing Fishing Rods |
| --- |



**Foreverlast Casting Rod**

**Illustration 3: Exemplary Images of Foreverlast's Infringing Fishing Rods**



**Foreverlast Spinning Rod**

18.    As a result of Foreverlast's activities related to its infringing fishing rods, there is a likelihood of confusion between Foreverlast and its fishing rods on the one hand, and Waterloo and its fishing rods on the other hand.

19.    Waterloo used its trade dress extensively and continuously before Foreverlast began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing into the United States its infringing products.   Moreover, Waterloo's trade dress acquired secondary meaning in the United States and in Texas and became famous in Texas and in geographic areas in Texas before Foreverlast commenced its unlawful use of Waterloo's trade dress.

20.    Foreverlast has also unlawfully used and continues to unlawfully use colorable imitations of Waterloo's Trademark in connection with, *inter alia*, advertising, promoting, offering to sell, selling, and/or distributing Foreverlast's infringing products, and is thereby infringing and diluting Waterloo's Trademark and intentionally trading on Waterloo's goodwill.

21.    Foreverlast is violating Waterloo's rights by using at least the mark shown below in commerce to, *inter alia*, advertise, promote, offer to sell, sell, and/or distribute Foreverlast's products, including at least its fishing rods, that are substantially similar to Waterloo's fishing rods.

| Illustration 5:  Example of Foreverlast's Violations of Waterloo's Rights |
|---|



22.     As a result of Foreverlast's activities related to its use of colorable imitations of Waterloo's Trademark, there is a likelihood of confusion between Foreverlast and its products on the one hand, and Waterloo and its products on the other hand.

23.     Waterloo used Waterloo's Trademark extensively and continuously before Foreverlast began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing its infringing products.  Moreover, Waterloo's Trademark acquired secondary meaning in the United States and in Texas and became famous in Texas and in geographic areas in Texas before Foreverlast commenced its unlawful use of at least one colorable imitation of Waterloo's Trademark.

24.     Foreverlast's actions have been intentional, willful, and malicious.  Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's fishing rods and unlawful use of colorable imitations of Waterloo's Trademark with knowledge of Waterloo's Trademark and with the intent of benefitting from Waterloo's goodwill in Waterloo's Trademark.

**Count I:**
**Trade Dress Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

25.    Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 24 as though fully set forth herein.

26.    Foreverlast's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Waterloo's trade dress.  Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Foreverlast with Waterloo and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Waterloo.

27.    Waterloo's trade dress is entitled to protection under the Lanham Act.  Waterloo's trade dress includes unique, distinctive, and non-functional designs.  Waterloo has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, Waterloo's trade dress has become a well-known indicator of the origin and quality of Waterloo's products.  Waterloo's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Waterloo's trade dress acquired this secondary meaning before Foreverlast commenced its unlawful use of Waterloo's trade dress in connection with the infringing products.

28.    Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable

injury to the goodwill and reputation for quality associated with Waterloo's trade dress, Waterloo's products, and Waterloo.

29.    Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's products and Foreverlast's continuing disregard for Waterloo's rights.

30.    Waterloo is entitled to injunctive relief, and Waterloo is entitled to recover at least Foreverlast's profits, Waterloo's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count II:**
**Trademark Infringement under §43(a) of the Lanham Act, 15. U.S.C. § 1125(a)**

31.    Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 30 as though fully set forth herein.

32.    Based on the activities described above, including, for example, Foreverlast's use of colorable imitations of Waterloo's Trademark, Foreverlast violates §43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Foreverlast's use of colorable imitations of Waterloo's Trademark is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Foreverlast with Waterloo and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Waterloo.

33.    Waterloo's Trademark is entitled to protection under the Lanham Act.  Waterloo's Trademark is inherently distinctive.  Waterloo has extensively and continuously promoted and used Waterloo's Trademark in the United States.  Through that extensive and continuous use, Waterloo's Trademark has become a well-known indicator of the origin and quality of Waterloo's

products. Waterloo's Trademark has also acquired substantial secondary meaning in the marketplace. Moreover, Waterloo's Trademark acquired this secondary meaning before Foreverlast commenced its unlawful use of colorable imitations of Waterloo's Trademark in connection with the infringing products.

34.    Foreverlast's use of colorable imitations of Waterloo's Trademark in connection with the infringing products has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's Trademark, Waterloo's products, and Waterloo.

35.    On information and belief, Foreverlast's use of colorable imitations of Waterloo's Trademark has been intentional, willful, and malicious. Foreverlast's bad faith is evidenced at least by Foreverlast's unlawful use of colorable imitations of Waterloo's Trademark to sell the infringing products, Foreverlast's infringement of Waterloo's other rights, Foreverlast's knowledge of Waterloo's rights, and Foreverlast's continuing disregard for Waterloo's rights.

36.    Waterloo is entitled to injunctive relief, and Waterloo is entitled to recover at least Foreverlast's profits, Waterloo's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

### Count III:
### Unfair Competition and False Designation of Origin under § 43(a)
### of the Lanham Act, 15 U.S.C. § 1125(a)

37.    Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 36 as though fully set forth herein.

38.    Foreverlast's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with

Waterloo, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Foreverlast has obtained an unfair advantage as compared to Waterloo through Foreverlast's use of Waterloo's trade dress, and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Foreverlast's infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Waterloo.

39.    Waterloo's trade dress and Waterloo's Trademark are entitled to protection under the Lanham Act.  Waterloo's trade dress includes unique, distinctive, and non-functional designs. Waterloo's Trademark is inherently distinctive. Waterloo has extensively and continuously promoted and used its trade dress and Trademark in the United States.  Through that extensive and continuous use, Waterloo's trade dress and Waterloo's Trademark have become a well-known indicator of the origin and quality of Waterloo's products.  Waterloo's trade dress and Waterloo's Trademark have also acquired substantial secondary meaning in the marketplace.  Moreover, Waterloo's trade dress and Waterloo's Trademark acquired this secondary meaning before Foreverlast commenced its unlawful use of Waterloo's trade dress and Waterloo's Trademark in connection with the infringing products.

40.    Foreverlast's use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's trade dress, Waterloo's Trademark, Waterloo's products, and Waterloo.

41.    On information and belief, Foreverlast's use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark has been intentional, willful, and malicious. Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's products, the similarity of its infringing products to Waterloo's Trademark, and Foreverlast's continuing disregard for Waterloo's rights.

42.    Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Foreverlast's profits, Waterloo's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count IV:**
**Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103**

43.    Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 42 as though fully set forth herein.

44.    Based on the activities described above, including, for example, Foreverlast's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Foreverlast is likely to dilute, has diluted, and continues to dilute Waterloo's trade dress in violation of § 16.103 of the Texas Business & Commerce Code. Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Waterloo's famous trade dress at least by eroding the public's exclusive identification of Waterloo's famous trade dress with Waterloo, by lessening the capacity of Waterloo's famous trade dress to identify and distinguish Waterloo's products, and by impairing the distinctiveness of Waterloo's famous trade dress.

45.    Waterloo's trade dress is famous and is entitled to protection under Texas law. Waterloo's trade dress includes unique, distinctive, and non-functional designs. Waterloo has extensively and continuously promoted and used its trade dress in the United States and in the

18

State of Texas.  Through that extensive and continuous use, Waterloo's trade dress has become a famous, well-known indicator of the origin and quality of Waterloo's products in the United States and in the State of Texas generally and in geographic areas in Texas, and Waterloo's trade dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of Waterloo and Waterloo's products.  Waterloo's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas.  Moreover, Waterloo's trade dress became famous and acquired this secondary meaning before Foreverlast commenced its unlawful use of Waterloo's trade dress in connection with the infringing products.

46.    Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's trade dress, Waterloo's products, and Waterloo.

47.    Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's products and Foreverlast's continuing disregard for Waterloo's rights.

48.    Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Foreverlast's profits, Waterloo's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

**Count V:**
**Trademark Dilution under Tex. Bus. & Com. Code § 16.103**

49.     Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

50.     Based on the activities described above, including, for example, Foreverlast's use of colorable imitations of Waterloo's Trademark, Foreverlast is likely to dilute, has diluted, and continues to dilute Waterloo's Trademark in violation § 16.103 of the Texas Business & Commerce Code.  Foreverlast's use of colorable imitations of Waterloo's Trademark is likely to cause, and has caused, dilution of Waterloo's famous Trademark at least by eroding the public's exclusive identification of Waterloo's Trademark with Waterloo, by lessening the capacity of Waterloo's famous Trademark to identify and distinguish Waterloo's products, and by impairing the distinctiveness of Waterloo's famous Trademark.

51.     Waterloo's Trademark is famous and is entitled to protection under Texas law. Waterloo has extensively and continuously promoted and used its Trademark in the United States and in the State of Texas.  Through that extensive and continuous use, Waterloo's Trademark has become a famous and well-known indicator of the origin and quality of Waterloo's products in the United States and in the State of Texas generally and in geographic areas in Texas, and Waterloo's Trademark is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of Waterloo and Waterloo's products.  Waterloo's Trademark has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas.  Moreover, Waterloo's Trademark became famous and acquired this secondary meaning before Foreverlast commenced its unlawful use of colorable imitations of Waterloo's Trademark in connection with the infringing products.

52.     Foreverlast's use of colorable imitations of Waterloo's Trademark has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's Trademark, Waterloo's products, and Waterloo.

53.     On information and belief, Foreverlast's use of colorable imitations of Waterloo's Trademark has been intentional, willful, and malicious.  Foreverlast's bad faith is evidenced at least by Foreverlast's unlawful use of colorable imitations of Waterloo's Trademark to sell the infringing products, and by Foreverlast's continuing disregard for Waterloo's rights.

54.     Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Foreverlast's profits, Waterloo's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

**Count VI:**
**Common Law Trade Dress Infringement**

55.     Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 54 as though fully set forth herein.

56.     Foreverlast's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with Waterloo, constitute common law trade dress infringement, at least because Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Waterloo.

21

57.     Waterloo's trade dress is entitled to protection under the common law.  Waterloo's trade dress includes unique, distinctive, and non-functional designs.  Waterloo has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, Waterloo's trade dress has become a well-known indicator of the origin and quality of Waterloo's products.  Waterloo's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Waterloo's trade dress acquired this secondary meaning before Foreverlast commenced its unlawful use of Waterloo's trade dress in connection with its infringing products.

58.     Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's trade dress, Waterloo's products, and Waterloo.

59.     On information and belief, Foreverlast's use of Waterloo's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's products and Foreverlast's continuing disregard for Waterloo's rights.

60.     Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Waterloo's damages, Foreverlast's profits, punitive damages, costs, and reasonable attorney fees.

**Count VII:**
**Common Law Trademark Infringement**

61.     Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 60 as though fully set forth herein.

62.    Foreverlast's activities described above, including, for example, Foreverlast's use of colorable imitations of Waterloo's Trademark, in direct competition with Waterloo, constitute common law trademark infringement, at least because Foreverlast's use of colorable imitations of Waterloo's Trademark is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Waterloo.

63.    Waterloo's Trademark is entitled to protection under the common law.  Waterloo has extensively and continuously promoted and used its Trademark in the United States and the State of Texas.  Through that extensive and continuous use, Waterloo's Trademark has become a well-known indicator of the origin and quality of Waterloo's products.  Waterloo's Trademark has also acquired substantial secondary meaning in the marketplace.  Moreover, Waterloo's Trademark acquired this secondary meaning before Foreverlast commenced its unlawful use of colorable imitations of Waterloo's Trademark in connection with the infringing products.

64.    Foreverlast's use of colorable imitations of Waterloo's Trademark has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's Trademark, Waterloo's products, and Waterloo.

65.    On information and belief, Foreverlast's use of colorable imitations of Waterloo's Trademark has been intentional, willful, and malicious.  Foreverlast's bad faith is evidenced at least by Foreverlast's unlawful use of colorable imitations of Waterloo's Trademark to sell the

infringing products, Foreverlast's infringement of Waterloo's other rights, and Foreverlast's continuing disregard for Waterloo's rights.

66.     Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Waterloo's damages, Foreverlast's profits, punitive damages, costs, and reasonable attorney fees.

**Count VIII:**
**Common Law Unfair Competition**

67.     Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 66 as though fully set forth herein.

68.     Foreverlast's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with Waterloo, constitute common law unfair competition, at least by palming off/passing off of Foreverlast's goods, by simulating Waterloo's trade dress and Waterloo's Trademark in a calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Foreverlast's infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Waterloo.  Foreverlast has also interfered with Waterloo's business.

69.     Waterloo's trade dress and Waterloo's Trademark are entitled to protection under the common law.  Waterloo's trade dress includes unique, distinctive, and non-functional designs. Waterloo's Trademark is inherently distinctive. Waterloo has extensively and continuously promoted and used Waterloo's trade dress and Waterloo's Trademark for years in the United States and the State of Texas.  Through that extensive and continuous use, Waterloo's trade dress and Waterloo's Trademark have become a well-known indicator of the origin and quality of Waterloo's products.   Waterloo's trade dress and Waterloo's Trademark have also acquired substantial

secondary meaning in the marketplace. Moreover, Waterloo's trade dress and Waterloo's Trademark acquired this secondary meaning before Foreverlast commenced its unlawful use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark in connection with its infringing products.

70.     Foreverlast's use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's trade dress, Waterloo's Trademark, Waterloo's products, and Waterloo.

71.     Foreverlast's use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark has been intentional, willful, and malicious. Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's products, the similarity of its infringing products to Waterloo's Trademark, and Foreverlast's continuing disregard for Waterloo's rights.

72.     Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Waterloo's damages, Foreverlast's profits, punitive damages, costs, and reasonable attorney fees.

### Count IX:
### Common Law Misappropriation

73.     Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 72 as though fully set forth herein.

74.     Foreverlast's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with Waterloo, constitute common law misappropriation.

75.     Waterloo created the products covered by Waterloo's trade dress and Waterloo's Trademark through extensive time, labor, effort, skill, and money.  Foreverlast has wrongfully used Waterloo's trade dress and colorable imitations of Waterloo's Trademark in competition with Waterloo and gained a special advantage because Foreverlast was not burdened with the expenses incurred by Waterloo.  Foreverlast has commercially damaged Waterloo, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of Foreverlast's infringing products, by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with Waterloo, and by taking away sales that Waterloo would have made.

76.     Waterloo's trade dress and Waterloo's Trademark is entitled to protection under the common law.  Waterloo's trade dress includes unique, distinctive, and non-functional designs. Waterloo's Trademark is inherently distinctive. Waterloo has extensively and continuously promoted and used Waterloo's trade dress and Waterloo's Trademark for years in the United States and the State of Texas.  Through that extensive and continuous use, Waterloo's trade dress and Waterloo's Trademark have become a well-known indicator of the origin and quality of Waterloo's products.  Waterloo's trade dress and Waterloo's Trademark have also acquired substantial secondary meaning in the marketplace.  Moreover, Waterloo's trade dress and Waterloo's Trademark acquired this secondary meaning before Foreverlast commenced its unlawful use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark in connection with its infringing products.

77.     Foreverlast's use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Waterloo for which Waterloo has no adequate remedy at law, including at

least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's trade dress, Waterloo's Trademark, Waterloo's products, and Waterloo. Moreover, as a result of its misappropriation, Foreverlast has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Waterloo invested in establishing the reputation and goodwill associated with Waterloo's trade dress, Waterloo's Trademark, Waterloo's products, and Waterloo.

78.    On information and belief, Foreverlast's misappropriation of Waterloo's trade dress and colorable imitations of Waterloo's Trademark has been intentional, willful, and malicious. Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's products, the similarity of its infringing products to Waterloo's Trademark, and Foreverlast's continuing disregard for Waterloo's rights.

79.    Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Waterloo's damages, Foreverlast's profits, punitive damages, costs, and reasonable attorney fees.

**Count X:**
**Unjust Enrichment**

80.    Waterloo realleges and incorporates the allegations set forth in paragraphs 1 through 79 as though fully set forth herein.

81.    Foreverlast's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its infringing products, in direct competition with Waterloo, constitute unjust enrichment, at least because Foreverlast has wrongfully obtained benefits at Waterloo's expense. Foreverlast has also, *inter alia*, operated with an undue advantage.

82.    Waterloo created the products covered by Waterloo's trade dress and Waterloo's Trademark through extensive time, labor, effort, skill, and money. Foreverlast has wrongfully

used and is wrongfully using Waterloo's trade dress and colorable imitations of Waterloo's Trademark in competition with Waterloo, and has gained and is gaining a wrongful benefit by undue advantage through such use.  Foreverlast has not been burdened with the expenses incurred by Waterloo, yet Foreverlast is obtaining the resulting benefits for its own business and products.

83.    Waterloo's trade dress and Waterloo's Trademark are entitled to protection under the common law.  Waterloo's trade dress includes unique, distinctive, and non-functional designs. Waterloo's Trademark is inherently distinctive. Waterloo has extensively and continuously promoted and used Waterloo's trade dress and Waterloo's Trademark for years in the United States and the State of Texas.  Through that extensive and continuous use, Waterloo's trade dress and Waterloo's Trademark have become a well-known indicator of the origin and quality of Waterloo's products.  Waterloo's trade dress and Waterloo's Trademark have also acquired substantial secondary meaning in the marketplace.  Moreover, Waterloo's trade dress and Waterloo's Trademark acquired this secondary meaning before Foreverlast commenced its unlawful use of Waterloo's trade dress in connection with its infringing products.

84.    Foreverlast's use of Waterloo's trade dress and colorable imitations of Waterloo's Trademark has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Waterloo for which Waterloo has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Waterloo's trade dress, Waterloo's Trademark, Waterloo's products, and Waterloo.  Waterloo accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Foreverlast has wrongfully obtained and is wrongfully obtaining a benefit at Waterloo's expense by taking undue advantage and free-riding on Waterloo's efforts and investments, and enjoying the benefits of Waterloo's hard-earned goodwill and reputation.

85.     Foreverlast's unjust enrichment at Waterloo's expense has been intentional, willful, and malicious.  Foreverlast's bad faith is evidenced at least by Foreverlast's direct copying of Waterloo's products, the similarity of its infringing products to Waterloo's Trademark, and Foreverlast's continuing disregard for Waterloo's rights.

86.     Waterloo is entitled to injunctive relief, and Waterloo is also entitled to recover at least Foreverlast's profits.

### Demand for Jury Trial

Waterloo hereby demands a jury trial on all issues so triable.

### Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Foreverlast has (i) infringed Waterloo's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (ii) infringed Waterloo's Trademark in violation of § 1125(a) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) diluted Waterloo's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (v) diluted Waterloo's Trademark in violation of Tex. Bus. & Com. Code § 16.103; (vi) violated Waterloo's common law rights in Waterloo's trade dress; (vii) violated Waterloo's common law rights in Waterloo's Trademark; (viii) engaged in common law unfair competition; (ix) engaged in common law misappropriation; (x) been unjustly enriched at Waterloo's expense, and that all of these wrongful activities by Foreverlast were willful;

2.     An injunction against further infringement and dilution of Waterloo's trade dress and Waterloo's Trademark, and further acts of unfair competition, misappropriation, and unjust enrichment, by Foreverlast, and each of its agents, employees, servants, attorneys, successors and

assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of Waterloo's trade dress and Trademark, pursuant to at least 15 U.S.C. § 1116 and Tex. Bus. & Com. Code § 16.104;

3.    An Order directing Foreverlast to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.    An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of Waterloo's trade dress or Trademark in Foreverlast's possession or control, (iii) all plates, molds, and other means of making the infringing products in Foreverlast's possession, custody, or control, and (iv) all advertising materials related to the infringing products in Foreverlast's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.    An Order directing Foreverlast to publish a public notice providing proper attribution of Waterloo's trade dress and Waterloo's Trademark to Waterloo, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.    An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.    An award of Foreverlast's profits, Waterloo's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104;

8.    Such other and further relief as this Court deems just and proper.

Dated:  June 25, 2021                    Respectfully submitted,

By: */s/ Joseph J. Berghammer*
Joseph J. Berghammer (admitted in the Southern
District of Texas)
Attorney-In-Charge
Illinois Bar No. 6273690
Southern District of Texas Bar No. 2868672
jberghammer@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Michael L. Krashin (pro hac vice forthcoming)
Illinois Bar No. 6286637
mkrashin@bannerwitcoff.com
Hugh A. Warren, V (pro hac vice forthcoming)
Illinois Bar No. 6336922
hwarren@bannerwitcoff.com
Banner & Witcoff, Ltd.
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR WATERLOO ROD
COMPANY, INC.**